HELVERING, Commissioner of Internal Revenue, v. BRITISH–AMERICAN TOBACCO CO., Limited.
No. 150.

Circuit Court of Appeals, Second Circuit.
March 5, 1934.

Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen., for petitioner.

H. H. Shelton, of Washington, D. C. (John H. Jackson and Harrison M. Robertson, both of New York City, of counsel), for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This is a petition to review a judgment entered against the Commissioner by the Board of Tax Appeals. It determined that there was no deficiency with respect to income taxes of the respondent for the years 1925 and 1926. The question presented is whether the respondent was subject to a corporation tax, with respect to interest paid to it by the government in the years 1925 and 1926, upon refunds of income and profit taxes illegally assessed against it in the calendar years 1917, 1918, and 1919. The interest received was $12,600.20 in 1925 and $182,832 in 1926. The overpayments were $1,394,357.-64.

The corporation reported these amounts on its tax returns for the years 1925 and 1926 as nontaxable income. Therefore, was the interest paid during 1925 and 1926, by the government, to the respondent, upon the overpayments of taxes, income from sources within the United States, within the meaning of sections 217 and 233 of the Revenue Act of 1926 (chapter 27, 44 Stat. 9 [26 USCA §§ 958, 985]).

Section 1019 of the Revenue Act of 1924 (chapter 234, 43 Stat. 346 [26 USCA § 153 note]) provides for the payment of interest at 6 per cent. on the allowance of a credit or refund of any tax erroneously collected. The Revenue Act of 1926, chapter 27, § 217 (a) 44 Stat. 30 (26 USCA § 958(a), provides: "In the case of a nonresident alien individual * * * the following items of gross income shall be treated as income from sources within the United States: (1) Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including (A) interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States and not having an office or place of business therein, or (B) interest received from a resident alien individual, a resident foreign corporation, or a domestic corporation, when it is shown to the satisfaction of the Commissioner that less than 20 per centum of the gross income of such resident payor or domestic corporation has been derived from sources within the United States. * * *"

Section 217(c), 26 USCA § 958(c), provides: "The following items of gross income shall be treated as income * * * other than that derived from sources within the United States as provided in paragraph (1) of subdivision (a)."

Section 233(b), 44 Stat. 41, 26 USCA § 985(b), provides: "In the case of a foreign corporation, gross income means only gross income from sources within the United States, determined * * * in the manner provided in section 217 [section 958]."

The plan of the Revenue Act indicates that the income of foreign corporations is divided into two groups, (a) that derived from sources within the United States, and (b) that received from sources without the

United States. The interest here involved was derived from sources within the United States.

■ But it is argued, by the respondent, that not all such interest derived from such sources is taxable, but only the interest of the types of obligation defined by the statute. It is said that the statute must be strictly construed, and on the analogy of decisions limiting the application of the word "obligations" in section 213, 26 USCA § 954 [U. S. Trust Co. v. Anderson, 65 F.(2d) 575 (C. C. A. 2); American Viscose Corp. v. Comm'r, 56 F.(2d) 1033 (C. C. A. 3)] it is urged that the same words in section 217 (26 USCA § 958) should be held not to include the statutory requirement of interest paid by the United States on refunded taxes. But the meaning given to the word used in one connection is not necessarily the meaning to be attributed to it when employed in other connections. It is a matter of legislative intent, and the legislative history of the two sections is not so nearly identical that Congress may be presumed to have intended the same thing in each. It is a fair inference that section 217 is the broader of the two. In its first form (as section 10 of the Revenue Act of 1916, 39 Stat. 765) it was apparently intended to extend the taxing power to situations not thought by the Attorney General (30 Ops. Attys. Gen. 435) to be included in the law as it then stood. Its present form, as indicated by the report of the Finance Committee of the Senate (Report No. 275, 67th Congress, 1st Sess. p. 16) is no retreat from that position, but rather a qualification and more explicit statement of that extension. We thus have revealed a purpose to enlarge the scope of the statute. It is only in keeping with that purpose to apply the statute to the obligation involved in the instant case.

■ The term "obligation" includes "any duty imposed by law" (Webster's New International Dictionary), and it is well settled that the popular and accepted import of the words furnishes the general rule for the interpretation of public laws. Woolford Realty Co. v. Rose, 286 U. S. 319, 327, 52 S. Ct. 568, 76 L. Ed. 1128; Old Colony R. Co. v. Comm'r, 284 U. S. 552, 560, 52 S. Ct. 211, 76 L. Ed. 484.

In U. S. Trust Co. v. Anderson, supra, we held that interest on condemnation awards was taxable as an obligation of a subdivision of a state. There is no substantial difference, in the viewpoint of taxation, between the obligation of a city to pay interest on an award and the obligation of the United States to pay interest on an overpayment of taxes, none of which were exempt later from taxation. In American Viscose Co. v. Comm'r, supra, the tax was imposed upon a domestic corporation for interest on refunded taxes.

■■ The question remains as to whether the United States is a resident within the meaning of section 217. The United States is a corporation. Respublica v. Sweers, 1 Dall. 41, 44, 1 L. Ed. 29; United States v. Maurice, 2 Brock. (U. S.) 96, 109 Fed. Cas. No. 15747 (per Marshall, J.). As such corporate entity, it must have a corporate residence; that residence must be within the United States.

We are referred to Helvering v. Stockholms Enskilda Bank, 68 F.(2d) 407 (Vol. 1, Prentice-Hall, 1933, p. 2300.529), Court of Appeals, District of Columbia, and State v. City of Trenton, 40 N. J. Law, 89, as being contrary to this view. The State v. City of Trenton, supra, turned on the intent of the Legislature, declared by the court to be manifest, that the debtor should not be released from taxation unless the tax could be collected from the creditor. The case at bar presents no such question. Helvering v. Stockholms Enskilda Bank, supra, rests heavily upon the determination of the New Jersey courts. We cannot agree with the prevailing opinion in saying that the United States is not a resident within the meaning of that term as used in section 217.

To be taxable as income, the interest received by the respondent must be regarded as interest on "an obligation of residents, corporate or otherwise." The statute does not declare the resident must be a corporation or an individual. The words are "corporate or otherwise." This language is sufficiently broad to embrace all conceivable entities, be they sovereign, corporate, or individual. There is no difficulty with the conception that a sovereign is within the United States and it is axiomatic to say that a sovereign resides where it is sovereign.

It is unlikely that Congress was more solicitous of the welfare of foreign corporations than of domestic in the collection of taxes, and, if it was the intention to regard interest paid to a domestic corporation as income, we think it did not intend to exclude a foreign corporation from the same obligation. No sufficient reason is advanced for exempting a foreign corporation when a domestic corporation is taxed. It has long been Congress' desire to extend income taxes to all forms of

taxable income. Heiner v. Colonial Trust Co., 275 U. S. 232, 235, 48 S. Ct. 65, 72 L. Ed. 256; Irwin v. Gavit, 268 U. S. 161, 166, 45 S. Ct. 475, 69 L. Ed. 897. And, indeed, it may well be said to be contrary to our nationalistic disposition to tax the one and exempt the other. It would require unmistakable language to carry conviction that Congress contemplated that corporations of foreign countries, doing business in the United States, in competition with domestic corporations and spending their incomes abroad, should be so favored.

By the Revenue Act of 1916 (c. 463, 39 Stat. 756), the Legislature not only sought to make the test of taxability of foreign corporations the "source" of the income, but it definitely had in mind the ruling of the Attorney General (30 Ops. Attys. Gen. 435) that, under the 1913 act (38 Stat. 166), a foreign corporation could carry on a business in the United States without being subject to a tax on income derived from stocks and bonds of a domestic corporation doing a domestic business or from obligations secured by mortgages on tangible property within the United States even though such obligations were held by such foreign corporations in the United States. Therefore it included the phrase "including interest on bonds, notes, or other interest-bearing obligations of residence, corporate or otherwise. * * *" 39 Stat. 765, § 10. Thus the Congress intended an all-inclusive and not restrictive taxation.

The history of the statute here in question indicates a purpose on the part of Congress to extend and make all-inclusive taxes upon income of foreign corporations derived from sources within the United States. Interest on an obligation of the United States is from a source within, and Congress intended to impose an income tax upon it. As said in Burnet v. Chicago Co., 285 U. S. 17, 52 S. Ct. 275, 277, 76 L. Ed. 587, the expression should be construed "so as to achieve, and not defeat, its (the legislature's) aim." Congress exempted from the normal tax all interest received from obligations of the United States, incurred in the borrowing of money, but made a certain class thereof subject to the surtaxes and war and excess profits taxes.

■ A review of the history of section 236 of the Revenue Act of 1926, c. 27 (44 Stat. 43 [26 USCA § 988]), here considered, discloses that it was enacted and re-enacted as a part of section 213 (26 USCA § 954), and that at no time has it been considered or treated as part of section 217 (26 USCA § 958). It had its origin in the Revenue Act of 1918,

c. 18 (40 Stat. 1057). As to individuals, section 210 (page 1062) imposed a normal tax and section 211 imposed a surtax, while section 230 (page 1075) imposed a normal tax and section 301 (page 1088) imposed a war and excess profits tax upon corporations. Section 213 (40 Stat. 1065) defined the gross income of individuals and section 233 (page 1077) made section 213 applicable to corporations. Subdivision b of section 213 (40 Stat. 1065), it will be observed, does not exclude from gross income interest upon all obligations of the United States incurred in the borrowing of moneys. Relating to the tax upon individuals, section 216 (page 1069) provided that for the purpose of normal tax only there should be allowed credits (b) "The amount received as interest upon obligations of the United States * * * which is included in gross income under section 213." Section 236 (page 1080) · contained a similar provision with respect to normal tax upon corporations. Thus there was exempted by Congress, both as to individuals and corporations, from the normal tax, all interest received from obligations of the United States incurred in the borrowing of money, but it made a certain class thereof subject to surtax and war and profit taxes. War and profit taxes were carried forward in the Revenue Act of 1921, § 301, c. 136 (42 Stat. 272), for the year 1921 only, and sections 213, 216, and 236 (42 Stat. 237, 242, 257) were carried forward without substantial change. The war and excess profits tax was in effect for the year 1921 and no longer. The provisions of sections 213, 216, and 236 were without limitation and were subsequently carried forward into the Revenue Act of 1924, c. 234 (43 Stat. 253), and 1926 (26 USCA §§ 954, 958 and notes, 988). So far as corporations are concerned, sections 213, 233, and 217 of the 1924 and 1926 acts (26 USCA §§ 954 and note, 985, 958 and note) includes in "gross income" interest upon certain of the bonds of the United States issued in the borrowing of money, and section 236 takes it out. Congress, we think, used the word "obligations" in section 236 in reference to those obligations the interest upon which it specifically included in gross income.

The history of this taxation statute warrants the approval of construction which results in consistency, and which should be adopted, making this, a foreign corporation, taxable as a domestic corporation has been held to be taxable. American Viscose Corp. v. Comm'r, supra.

Judgment reversed.