## PRODUCERS' CREAMERY CO. v. UNITED STATES.

### No. 6210.

Circuit Court of Appeals, Fifth Circuit.

Jan. 21, 1932.

Harry C. Weeks, of Wichita Falls, Tex., for appellant.

Wright Matthews, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., and Norman A. Dodge, U. S. Atty., of Fort Worth, Tex.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, a corporation organized under the general corporation laws of Texas as a dairy and creamery company, with a capital stock of $20,000 paid in, paid substantial income taxes in 1924 and 1925. Its claim for refund on the ground that it was a co-operative farmers' organization doing business in accordance with section 231 of the Revenue Acts of 1924 and 1926 (26 USCA § 982 and note), and therefore exempt from taxation, was allowed and paid on October 16, 1928. The money had no sooner been paid than the government demanded it back on the ground that it had erroneously refunded it. This suit

followed appellant's refusal to comply with the demand. A jury waived, the case was submitted to the court upon substantially the same facts upon which the Bureau had first made, and then demanded back, the refund. These facts are: While all of its members were producers of milk, the company was not at any time a mere sales agent for its members. It was actively engaged in its own behalf as a dairy and creamery company, obtaining from producers, nonmembers as well as members, milk and cream, and manufacturing butter, cheese, and other dairy products, which, together with the milk and cream, it sold, and the proceeds from which it used to build up and establish its business and acquire a plant and equipment. Its established policy was not to pay dividends, at least until it had thoroughly established its plant and business. A stockholder, however, was paid a bonus over the regular market price on milk brought in by him up to ten gallons per day for each $100 of stock owned by him. It was the policy of the company to, and it did, purchase its raw milk from its stockholders, except when they were unable to supply its demands; then it purchased from nonstockholders, paying them the current market price without bonus. In 1924 and 1925 the company made large net profits of almost $15,000 a year, all of which it plowed back into buildings and equipment. During this period it purchased 70 per cent. of its supplies from members; 30 per cent. from nonmembers. At no time did the company simply deduct the cost of handling the shipments and return the proceeds to the members. It could not do so, for it was in the business of selling and distributing milk and cream, and bought milk for itself. At no time did it in any way distribute to or set apart for its nonmember customers any part of the profits arising from these purchases.

▉▉ Appellant comes here complaining of the judgment for the government entered on these facts. We think the judgment was right. The most casual reading of the invoked sections of the Revenue Acts will show that appellant's operations do not bring it within their letter. The most careful reading of those acts and the regulations promulgated to enforce them will show that appellant comes within neither their letter nor their spirit. The Revenue Act of 1924, § 231 (11), 26 USCA § 982 note, extends the exemption to "farmers', fruit growers', or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the pro-

ceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them," while that of 1926, substantially enacting into law the provisions of art. 522 of the regulations promulgated for the enforcement of the act of 1924, extended the exemption of section 231 (12), 26 USCA § 982 (12) to "farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members and other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them."

Conceding arguendo, though Riverdale Co-operative Creamery Ass'n, v. Com'r (C. C. A.) 48 F.(2d) 711, 714, is to the contrary, that article 522 of the regulations in itself, and in the light of its enactment into law in the act of 1926, is effective to enlarge the exemption conferred by section 231 of the 1924 act, appellant can take nothing from the concession. This article does indeed, by affirmatively recognizing the right of such associations to act for producers generally, to pay dividends to accumulate a reserve, and to have a capital stock, clear up for appellant the terms of the 1924 act limiting the benefits of the section to associations operating merely as sales agents for members, and turning back to members the proceeds of the sales, less costs. It, however, specifically provides that the proceeds, less the necessary operating expenses, must be distributed among the producers upon the basis of the quantity of milk or butter fat in the milk, and that, "if the proceeds of the business are distributed in any other way than on such proportionate basis, the association does not meet the requirements of the statute and is not exempt."

Appellant does not distribute the proceeds less expenses among the producers with whom it deals in this way. It does not distribute them in any way to 30 per cent. of its producer customers. These get no bonuses, are entitled to no dividends, have no interest in the company. Nor does it even distribute the proceeds in this way to its members. In a small way it makes some distribution based upon supplies furnished, that is, a bonus is paid on ten gallons of milk a day on each $100 of stock, but its real distribution is made and to be made to its stockholders, not in proportion to the milk supplied, but in proportion to their stock interest in the capital and surplus which, through the business done with

106

members and nonmembers, it is building up for them.

It is plain, therefore, that appellant was not in 1924 either under the terms of the statute standing alone, or, as liberalized by the regulations, a co-operative association as contemplated in the act. South Carolina Produce Ass'n v. Com'r (C. C. A.) 50 F.(2d) 742. We think it equally clear that it was not exempt under the 1926 act. This act does expressly extend the exemption to corporations having a capital stock, paying dividends on the stock, and accumulating a reserve, and does specifically provide that such an association may market the products of nonmembers to the extent of 50 per cent. of its business. It, however, just as the 1924 statute does, bases the tax exemption upon the fact that the association is organized to, and in operation does, turn back to those for whom it markets their produce the proceeds of the sales, less operating costs. Here the undisputed proof shows that appellant makes at least 30 per cent. of its profit from nonmembers to whom it turns nothing back.

It is a universal rule that one who would claim the benefits of a statute must bring himself, at least substantially, within its terms. Especially is this true of claimants under statutes purporting to exempt from taxation. Bank of Commerce v. State of Tennessee, 161 U. S. 134, 16 S. Ct. 456, 40 L. Ed. 645; Heiner v. Colonial Trust Co., 275 U. S. 232, 48 S. Ct. 65, 72 L. Ed. 256; Ins. & Title Guarantee Co. v. Com'r (C. C. A.) 36 F.(2d) 842, 843. Appellant, in the face of the language of the statutes, and of these undoubted rules governing its construction and application, pressing upon us considerations of the policy to foster co-operative efforts which Congress is supposed to have had in mind in enacting these statutes, asks that we construe them to mean other than as they provide; that we extend them to embrace institutions which neither a literal nor a liberal construction of their language will embrace. This we may not do.

Opinions treating of questions similar to the one before us, and taking the same general view of them that we have taken, are South Carolina Produce Ass'n v. Com'r, supra; Northwestern Jobbers' Credit Bureau v. Com'r (C. C. A.) 37 F.(2d) 880; Riverdale Co-operative Creamery Ass'n v. Com'r, supra; Burr Creamery Co. v. Com'r, 23 B. T. A. 1007; Fruit Growers Supply Co. v. Com'r, 21 B. T. A. 315.

The judgment is affirmed.