## CRANE–JOHNSON CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 11446.

Circuit Court of Appeals, Eighth Circuit.

Aug. 3, 1939.

Rehearing Denied Sept. 15, 1939.

John E. Hughes, of Chicago, Ill., for petitioner.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Thomas H. Remington, of Rochester, N. Y., Philip F. Biggins and Claude W. Dudley, both of Washington, D. C., and Carter & Jones, of St. Louis, Mo., amici curiæ.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals. The facts were stipulated and hence are not in dispute. Petitioner, a corporation, was organized under the laws of the State of North Dakota in 1903. As of January 1, 1936, it had a deficit of $21,251.40. The records, prior to January 1, 1929, do not show whether the deficit occurred from operating losses or capital distributions in excess of earnings, or other adjustments. No dividend distribution had been made by the petitioner since March, 1930, when $9,672 was distributed from its surplus balance. In its income tax return for the calendar year 1936, it claimed a credit under Section 26(c) of the Revenue Act of 1936, 49 Stat. 1664, against the imposition of surtax on undistributed profits under Section 14(a), 49 Stat. 1655, which the commissioner disallowed. The net income computed for 1936 was $13,450.76. The commissioner found a deficiency of $1,707.36 on an undistributed net income which he found to exist in the amount of $12,032.72. The Board of Tax Appeals having sustained this determination, the petitioner seeks a review of that decision.

It is the contention of the petitioner that it was not subject to the undistributed profits surtax because it did not have any surplus or undivided profits from which, under the laws of North Dakota, any dividends could lawfully have been paid or distributed.

Section 4543 of the North Dakota Compiled Laws of 1913 provides that: "The directors of corporations must not make dividends except from the surplus profits arising from the business thereof; nor must they divide, withdraw or pay to the stockholders, or any of them, any part of the capital stock, nor must they create debts beyond the subscribed capital stock * * * ."

Section 4544 provides as a penalty for a violation of Section 4543 that the directors under whose administration a violation shall have occurred, except those who have caused their dissent therefrom to be entered at large on the minutes or were not present, shall in their individual and private capacity be jointly and severally liable to the corporation and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or the debt contracted.

The Revenue Act of 1936 imposed a special surtax on that part of the profits of the corporation not distributed as dividends. Section 26(c) allowed a credit against the income on which this tax was imposed in the event a corporation was expressly restricted from payment of dividends by "a written contract executed by the corporation prior to May 1, 1936." It is the contention of petitioner that the North Dakota law became a part of the contract between the corporation and the state, and hence, by the provisions of Section 26(c) (1) of the Revenue Act of 1936, it was entitled to credit for dividends which could not be paid without violation of a written contract executed by the corporation, and that if the Revenue Act should be construed to tax the corporation because its directors refused to violate the state law, the Act violated the Fifth Amendment to the Constitution.

The Supreme Court of North Dakota has held that a dividend can not rightfully be declared by a corporation except out of the profits earned by it, and that this principle is embodied in the North Dakota statutes above referred to. Ulness v. Dunnell, 61 N.D. 95, 237 N.W. 208. Similar statutory provisions were in existence when petitioner was incorporated.

The question for determination is whether, within the purview of Section 26 (c) (1) of the Revenue Act of 1936, petitioner's charter, including as it doubtless does the North Dakota statutes, constituted a "written contract executed by the corporation." For some purposes, the charter of a corporation may be said to be a contract with the state, and the laws, constitutional or statutory, of the state where the corporation is organized become a part of its articles of incorporation, so that the charter of a corporation organized under general law consists of its articles of incorporation and the laws applicable thereto. Here, the articles of incorporation and such certificate as may have issued on the organization of the corporation contain no provision restricting dividend payments. It is necessary, therefore, to look to the statutes of North Dakota for the restriction, and to determine whether the state law of North Dakota is a written contract executed by the corporation.

As has been observed, Section 4543 of the North Dakota Compiled Laws contains a prohibition against improper declaration of dividends by directors, and Section 4544 penalizes such consenting directors by making them jointly and severally liable to the corporation and to the creditors in the event of dissolution, to the full amount of the capital stock reduced. These statutes, we think, do not establish a contract executed by the corporation expressly dealing with the payment of dividends. If there is such a contract, it is not an express one, but is implied. Under these statutes, the directors assume a liability as to creditors akin to that of suretyship, and the corporation may itself hold its directors liable for improper distribution of its assets. The obligation is that of the directors, and in the event of the improper exercise of their power to declare dividends, they, as distinguished from the corporation, may be held liable for the consequences of a violation of the statute. Under the North Dakota statutes the liability is statutory and is purely one between the directors and the creditors. The corporation itself has made no written contract affecting its right to declare dividends.

Section 26(c) (1) of the Revenue Act of 1936, which is invoked, is a credit provision granting credits or exemptions. Such provisions in the tax laws are to be strictly construed. Helvering v. Inter-Mountain Life Insurance Co., 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227; Heiner v. Colonial Trust Co., 275 U.S. 232, 48 S. Ct. 65, 72 L.Ed. 256; United States Trust Co. v. Anderson, 2 Cir., 65 F.2d 575.

We are here considering a tax law, and the question is not whether for any purpose a charter or a state law may be treated as a contract, but rather whether they together may be considered a written contract executed by the corporation within the meaning of Section 26(c) (1) of the Revenue Act of 1936. Such contract as arises from the organization of a corporation under state laws is an implied rather than a voluntary written agreement entered into by the corporation. Congress has the power to levy a tax on corporate net income even though there be an impairment of capital. Willcuts v. Milton Dairy Co., 275 U.S. 215, 48 S.Ct. 71, 72 L.Ed. 247.

It is worthy of note that an analogous provision is found in Section 26(c) (2) of the Revenue Act of 1936, which allows a credit of an amount equal to the portion of the earnings and profits of the taxable year which is required "(by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside." Clearly, this provision relates to a corporate undertaking to discharge a certain obligation out of earnings, and not to any statutory provisions. These similar provisions should be construed by the same rule.

Conceding the petitioner fully bound by the North Dakota statutes inhibiting the declaration of dividends, it does not follow that it is entitled to the exemption or credit which Congress saw fit to grant.

It is further urged that if construed to tax a corporation because it failed to do an unlawful and criminal act, the statute violates the Fifth Amendment. But no North Dakota statute has been called to our attention which makes it a crime to declare a dividend out of capital. Petitioner is urging the court to decide a question of constitutional law based upon a hypothetical set of facts, which is not permissible. Tennessee Publishing Co. v. American Nat. Bank, 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. 13; Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed 950; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

In the list of points to be argued in petitioner's brief appears the point that the Board should have granted the petition for rehearing. The matter is not referred to in the body of the brief and should probably be treated as abandoned. It is, however, referred to in certain briefs filed amicus curiæ. On this point we think it sufficient to say that such a petition is addressed to the discretion of the Board, and in the absence of an abuse of discretion its ruling should not be disturbed. The basis for the petition was the fact that the petitioner was represented before the Board by a certified public accountant who was not a lawyer. It is strenuously urged that such a public accountant was engaged in the unauthorized practice of law. Rule 2 of the Rules of Practice and Procedure before the Board of Tax Appeals permits certified public accountants duly qualified under the laws of any state or territory or the District of Columbia to practice before the Board. This rule was promulgated under Section 907(a) of the Revenue Act of 1924 as amended, 26 U.S.C.A. § 611.

The statute gave the Board full authority to make rules governing the practice before it. Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494. Petitioner voluntarily made its choice of representative. After an adverse decision, petitioner argues that as only a question of law was presented, it was entitled to go before the Board through a lawyer. It was undoubtedly in the first instance entitled to be so represented had it so elected; but it is certainly not in position to complain that the Board did not compel it to be so represented. In the denial of petition for rehearing, we are of the opin-

ion that there was no abuse of discretion. Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325. We are not here attempting to determine the question as to whether the appearance before the Board by a certified public accountant constituted the unlawful practice of law in the District of Columbia. We have no jurisdiction or power to determine that question, and in any event it would be improper to pass judgment upon such a question in the absence of notice to and an opportunity to be heard on the part of the certified public accountant who appeared for the petitioner. In re Noell, 8 Cir., 93 F.2d 5.

The decision of the Board of Tax Appeals is therefore affirmed.